## DAEGLING vs. THE STATE.

*December 19, 1882 — January 9, 1883.*

BASTARDY PROCEEDINGS: EVIDENCE: *(1) Of immaturity of child. (2) As to intercourse with others than defendant: Instructions to jury.*

1. In a prosecution under the bastardy act it appeared that the time intervening between the date at which the mother testified the child was begotten by the defendant and the date of its birth was forty days less than the usual period of gestation. The physician who attended at its birth having testified that he thought the child was not fully developed because, among other things, it had no hair and its finger and toe nails were not fully developed, other physicians, examined as experts on behalf of the defendant, were asked if a scientific medical opinion as to the maturity or immaturity of a child could be based on the lack of hair, eyebrows, toe nails, etc. An objection to the question was sustained. *Held,* error.

2. The evidence in this case (stated in the opinion) is held sufficient to entitle the defendant to have had given to the jury instructions asked by him, to the effect that the jury might determine from the evidence whether it was probable or improbable that the complaining witness may not have had sexual intercourse with one B., rather than with the defendant; and that if the jury believed from the evidence that any other man had sexual intercourse with her at or about the alleged conception, then they must find the defendant not guilty.

ERROR to the Circuit Court for *Washington* County.

This is a proceeding under the bastardy act. The prosecutrix is one Margaret Little. On July 18, 1879, she made complaint, in writing, on oath that she was then pregnant with a child, which, if born alive, would be a bastard, and charged therein that the plaintiff in error is the father of such child. He was thereupon arrested, and held to answer the charge in the circuit court. A trial in that court resulted in a verdict of guilty. A motion for a new trial was denied, and judgment of affiliation and for the maintenance of the child was entered against the accused upon the verdict. The

accused has sued out a writ of error to bring the proceedings and judgment here for review. The testimony on the trial, and the rulings of the court, are sufficiently stated in the opinion.

For the plaintiff in error there was a brief by *Paul A. Weil*, as attorney, and *W. J. Turner*, of counsel, and oral argument by *Mr. Turner*.

*P. O'Meara*, for the state.

Lyon, J. 1. The prosecutrix, in her complaint, charges that the plaintiff in error, *Daegling*, begat her child on or about March 17, 1879, and she testified on the trial that it was begotten between March 14th and March 18th of that year, and that the child was born on the 10th of the following November. Taking the intermediate date of March 16th as the time of the connection, 239 days only intervened before her delivery. The testimony is that the usual period of gestation is 280 days. Hence, if her statement is true, the birth of the child was premature by about forty days. Three physicians testified as witnesses on the trial. They agree that there are certain appearances of a new-born infant which indicate whether or not the birth is premature.

Dr. Hunt, who attended the prosecutrix when the child was born, was called on behalf of the prosecution, and testified that he thought the child was not fully developed. He mentioned several conditions of the child on which he based his opinion, among which were that he thought it had no hair, and its finger and toe nails were not fully developed. Dr. Marston and Dr. Senn were called by the accused. The former saw and examined the child the evening of its birth; the latter, a week or two later. Both expressed the opinion that it was a fully-developed child — a nine-months child, as Dr. Senn puts it. Dr. Marston and Dr. Senn were asked whether a physician would base an opinion as to the maturity or immaturity of a child upon the want of eyebrows, hair,

and toe nails at its birth; whether an opinion based on the want of these would be a scientific medical opinion. The court sustained an objection to these questions. We think the questions should have been answered. It was a vital inquiry in the case whether the child was fully developed, or whether it was prematurely born. If fully developed, it could not have been the child of *Daegling*. The jury were so instructed. The questions went to the grounds, or some of them, upon which Dr. Hunt predicated his opinion that the child was prematurely born. The witnesses to whom the questions were put showed themselves competent to testify as experts in that behalf, and their answers, had they been allowed to answer, might have satisfied the jury that their diagnosis of the case was correct, and that of Dr. Hunt erroneous. We also think the question should have been answered irrespective of the testimony of Dr. Hunt. The testimony sought to be elicited may have satisfied the jury that the statement of the prosecutrix, thus tested by known scientific facts, was highly improbable. This would have made a case of reasonable doubt of the truth of her story, and of the guilt of the accused. He was clearly entitled to examine the professional witnesses fully as to significance of the presence or absence in the child of any and all alleged conditions and appearances. Because this right was denied him there must be another trial.

2. We are further of the opinion that the record discloses another error. The prosecutrix was fourteen and one half years old when she alleges that the accused got her with child. She had menstruated for three years. She appears, judging from her testimony, to be a young woman of considerable intelligence. The accused was over sixty-eight years of age at the time it is alleged he had sexual intercourse with the prosecutrix, and had a wife and twelve children,—, his youngest child being then fifteen years of age. She testifies that such intercourse took place about dark, in a fence

corner on the highway. She does not testify to any previous solicitation on his part or reluctance on hers, or to any conversation whatever between them. She says that is the only time she ever had sexual intercourse; that she experienced some pain, but not much; and that she don't remember whether she felt any unpleasantness, or any lameness or soreness afterwards as the result of the copulation. In the fall of 1878 the mother of the prosecutrix, who had been a widow for several years, intermarried with one Henry Buddenhagen. She had two other children younger than Margaret. These, with a brother and sister of the husband, constituted the family. The brother, William Buddenhagen, was then about twenty years old. The testimony tends to show intimate relations between them. One witness says they "kept company together and he was her beau." It is in proof that they and his sister, who was two years younger than the prosecutrix, lived by themselves two months during the winter of 1878–9, and that on one occasion, in March, 1879, he went with her to a spelling-school, and took her home late in the evening. It also appears that after Margaret became pregnant, and before she made complaint against *Daegling*, young Buddenhagen disappeared from the neighborhood, and nothing is disclosed of his whereabouts for the next two years. His brother testified at the trial: "He was down here last week. He lives in Outagamie county." The reason of his going away and where he went is otherwise entirely unexplained.

In view of the above testimony, and based upon it, counsel for the accused prayed the following instructions to the jury, which the court refused to give: " The jury may determine from the evidence whether it is probable or improbable that the complaining witness may not have had sexual intercourse with William Buddenhagen, rather than with the defendant, and to determine that, the jury may take into consideration the facts that he, the said William Buddenhagen, was out

with her at a late hour of the night, and lived in the same house with her for one or two months prior to the alleged intercourse, and was at the same time 'her beau.'" And further: "If the jury believe from the evidence that any other man had sexual intercourse with the complaining witness at or about the alleged conception, then they must find the defendant not guilty."

We think there is sufficient testimony in that behalf to entitle the accused to have these instructions given to the jury, and hence that the refusal to give them was error. There is no equivalent for them in the general charge. On the contrary, the learned circuit judge told the jury that there was little or no testimony of improper conduct on the part of the prosecutrix. The remark is hardly sustained by her own version of the circumstances under which she was got with child.

For the errors above indicated the judgment must be reversed, and the cause will be remanded for a new trial.

