## James M. Robnett

### v.

## The People, etc.

1. Bastardy—Making profert of child.—In an action of bastardy it is improper to introduce the bastard child in evidence for the purpose of showing a resemblance between it and the defendant.

2. Evidence.—The questions asked the plaintiff in this case, to which objection was sustained by the court below, were pertinent, either for the purposes of impeachment or showing the general character of the witness, and in arriving at the truth of the charge against the defendant.

Appeal from the Circuit Court of Marion county; the Hon. William H. Snyder, Judge, presiding. Opinion filed April 6, 1885.

Messrs. Casey & Dwight, for appellant; as to making profert of child, cited Risk v. People, 19 Ind. 152; People v. Carney, 29 Hun (N. Y.), 47.

As to evidence: Benham v. State, 91 Ind. 82; O'Brien v. State, 14 Ind. 469; Smith v. Nevlin, 89 Ill. 193; Farwell v. Warren, 51 Ill. 470; Tracy v. People, 97 Ill. 103; Deagling v. State, 56 Wis. 586; Ray v. Bell, 24 Ill. 444; Craig v. Rohrer, 63 Ill. 325; Johnson v. People, 94 Ill. 505.

Mr. H. C. Goodnow and Mr. W. D. Farthing, for appellees, cited R. S., 1883, p. 177, § 6; McFarland v. People, 72 Ill. 368; McElhaney v. People, 1 Bradwell, 548.

Casey, P. J. In this proceeding appellant is charged with bastardy. It is alleged that he is the father of the illegitimate child of the relatrix, Jennie J. Dee. The prosecution was brought in the County Court of Marion county, where, upon a trial, a judgment was rendered against appellant. He appealed the cause to the circuit court of that county, where, upon a trial before the court and a jury, he was again found to be the father of the child in question. The case is brought to this court by appeal. The errors assigned are:

I.   The court erred in permitting plaintiff to make profert of the alleged bastard child to the jury as evidence in this case.

II.   The court erred in the admission of evidence on behalf of the plaintiff.

III.   The court erred in sustaining plaintiff's objections to questions asked by defendant on the cross-examination of the prosecuting witness, Jennie Dee.

IV.   The court erred in sustaining objections to and ruling out evidence offered on behalf of the defendant.

V.   The court erred in the instructions given for the plaintiff.

VI.   The court erred in modifying instructions asked by the defendant.

VII.   The court erred in overruling defendant's motion to set aside verdict and for new trial.

Exceptions were saved by counsel for appellant to the ruling of the court.

On the trial of the cause in the circuit court, appellees were allowed by the court, against the objections of appellant, to make profert of the child in question, or introduce it as evidence against appellant.

One of the errors assigned questions the ruling of the court in this respect.   This question, so far as we have been able to ascertain, has been very seldom before the courts of this country.

The case of The People, etc., v. Carry, reported in 29 Hun, Supreme Court Reports of N. Y., was a proceeding against the defendant charging him with bastardy.   On the trial of the cause in the court below, the district attorney was allowed to ask the relatrix, who was on the stand as a witness, to look at the child and tell what the color of its eyes was.   The witness replied, "Its eyes are blue."   The court, in ruling upon this point, said, "We are of the opinion that this was error."

The evidence enabled the court and jury to compare the color of the child's eyes with those of the defendant, who was present in court.   We do not regard this kind or character

of evidence as safe or proper. It is uncertain and unreliable.

In the case of Petree v. How, reported in 4 Thompson & Cook, 85, it was held that such evidence was calculated to and probably did prejudice the defendant. That the court erred in allowing the evidence to go to the jury. The argument used in that case as to the color of the eyes, applies with equal force to the case now under consideration. Ordinary observation teaches us that in the same family of children different colors of hair and eyes are not unusual, and that it is not at all certain that the children resemble the reputed father. It certainly would be an uncertain, unsafe and dangerous doctrine to hold that the paternity of an illegitimate child might be shown by comparing the color of its hair and eyes with that of the alleged parent. It has been wisely held that such testimony does not create a circumstance in that character of case, because if admitted to go before the jury it might bring shame and disgrace upon the honest and best citizens in the community.

In the case of Risk v. The State, ex rel., etc., reported in 19 Ind. 152, which was a prosecution for bastardy, the court said: " The State was allowed to give the bastard child in evidence, so that the jury might compare it with the defendant, who was then in court." This seems to have been done without objection, and the court instructed the jury, on the part of the prosecution, that if they discovered a resemblance between the child and the defendant, they might regard it as a circumstance tending to prove that the defendant was its father.

The court said: " We doubt the right to introduce the child in evidence. We have seen no authority on the point. It would be a most uncertain rule of evidence, involving the necessity of giving the alleged father in evidence.

Besides it is a well established fact, at least to those who have made such subjects a study, that a child changes its primal appearance often and very much in the first three or four months of its existence. The record shows that the illegitimate child in the case now under consideration was less

than four months old at the time of the trial in the circuit court. This fact if possible renders the testimony more uncertain.

In the case of the United States v. Collins, reported in first Cranch Circuit Court Reports, 592, the court refused to admit the testimony of witnesses to prove the likeness between the defendant and the child. This was an indictment against the reputed father for not supporting the bastard child.

In New England where most of the reported cases of this character are to be found, so far as we have seen, the decisions are to some extent conflicting on this subject. In the case of Keneston et ux v. Rowe, reported in 4 Shepley (Maine), 38, the defendant offered to prove that the child did not resemble him in form or complexion. This was a prosecution for bastardy and the child was more than fifteen years old, the defendant having been out of the State since the birth of the child. The court in substance said it was not the color or any peculiar conformation or form of features as matter of fact that were proposed to be proved. It was to prove a resemblance which is a mere matter of opinion. Witnesses on that subject, if they could have sight of the persons, the child and reputed father might be indefinitely multiplied without in the least affording any satisfactory ground of judgment, or final determination by the court or jury. Witnesses, except in some art, trade or profession, are not called upon to form comparisons and to testify to opinions arising therefrom, and there is nothing of art, trade or profession in the subject under discussion that we have been able to discern.

In the case of Young v. Makepeace, 103 Mass. 50, which was a prosecution for bastardy, the court in substance said: We think also the testimony to show points of dissimilarity between the bastard child and Dean, whom the defendant alleged was the father of the child, should not have been admitted. Even when there is a noticeable resemblance there may be equally marked points of dissimilarity. Points of dissimilarity not implying a difference of race do not even tend to prove paternity or to disprove it. They are of much less significance than even points of resemblance. In the case

of Eddy v. Gray, 4th Allen (Mass.), 435, which was a pro-
ceeding against the defendant for bastardy; it was in sub-
stance said that the proof offered to show a supposed or al-
leged resemblance of the child to the defendant was properly
rejected. It is not the kind of evidence which comes within
the rule in relation to experts, upon questions of skill or
of knowledge acquired by some peculiar experience or educa-
tion. 1 Greenleaf, Ev., Sec. 440. And besides, the witnesses
called did not profess to have any special skill upon the sub-
ject of inquiry.

As we have said, the decisions are somewhat conflicting on
this subject in the New England States, but the weight of au-
thority undoubtedly is that it is improper to introduce the
bastard child in evidence, for the purpose of showing a resem-
blance between it and the defendant.

The third and fourth errors assigned, question the ruling
of the court as to the introduction of testimony. The rela-
trix was asked on cross-examination, when was the last time
she had her monthly sickness previous to the birth of the
child? and if she did not at defendant's house, in the pres-
ence of Miss Preston, tease and pick at Wright? and also if
she did not at the house of Isham Preston, a short time be-
fore she left defendant's house, in the presence of Miss Pres-
ton, say that she had a notion to kiss Charles Wright and see
what he would do. She was also, on cross-examination, asked
the following questions: Did you not at the house of defend-
ant, in the month of July or August, go into the kitchen
where Jack Baldwin was lying, and pull up your clothes to
show him your legs and look at him and smile? To each of
these questions objection was made by the State's attorney
and the objection was sustained by the court.

The court erred in sustaining the objection to these ques-
tions. They were pertinent either for the purpose of impeach-
ment or showing the general character of the witness, and in
arriving at the truth of the charge against the defendant.

Of all the tests which the law has provided for the ascer-
tainment of truth, the right of cross-examination is justly
deemed the most powerful and efficacious. Courts, therefore,

while guarding any abuse of the right, watch with zealous care any attempt to invade or restrict it. Tracy v. The People, etc., 97 Ill. 101.

William Tweed, a witness on the part of defendant, was asked if the relatrix did not state on the former trial that the last time she had her monthly sickness was the 21st of July, 1883, or that in substance. Objection was made to this question and sustained by the court. The court erred in sustaining this objection. It was a material question, either regarded as one of impeachment, or for the purpose of showing that the defendant was not the father of the child.

The relatrix stated in her testimony that she was thirteen years old in July, 1884. That she went to the house of defendant to live on the 29th of June, 1883, and lived there until the fourth of September following. That about two weeks after she went there defendant came to her bed. He did not have intercourse with her the first night, but did the second night, and pretty near every night while she stayed there he came to her bed and had intercourse with her. Defendant's wife, his child and a hired girl all slept in one room—they in one corner and the relatrix in another corner —the beds being ten or twelve feet apart.

The witness, Clara Preston, introduced on the part of defendant, stated that she went to the house of defendant six or seven days after the relatrix, Jennie Dee, came there. That she stayed there that week and the third week also. That she slept with Jennie and on the front side of the bed. That the defendant was at home; that no one came to Jennie Dee's bed while she was there. The witness also stated that she had often seen Jennie picking at and teasing Mr. Wright.

This witness was asked, on the part of defendant, the following questions: If any one had come to the bed would you have known it? and what did she (meaning Jennie Dee) say, if anything, about his (Wright) feeling her breast? and, also, what was Jennie Dee's conduct while she lived at defendant's as to being modest and retiring, or forward, as a girl or woman?

The witness, Ellender Preston, introduced on the part of

defendant, was asked the following question: What did she (Jennie Dee) say to you, if anything, about his (Wright) seeing her at the barn, and what they done there?

The court sustained objections to each of these questions.

These were pertinent and material questions, and the court erred in sustaining objections to them. They were important circumstances to be shown by the defendant, and it was manifest error in refusing to allow him to do so. The sole object of the examination was to arrive at the truth or untruth of the charge. The suppression of this testimony in a very great measure defeated the purpose of the examination. The jury should have been allowed to hear and consider all the facts and circumstances properly connected with the case, so as to enable them to arrive at a correct conclusion: Benham v. The State, etc., 91 Ind. 82; Smith v. Nevlin, 89 Ill. 193; Farwell v. Warren, 51 Ill. 470; Tracy v. The People, etc., 97 Ill. 103; Daegling v. The State, 56 Wis. 586.

We do not deem it necessary to discuss other errors assigned, and inasmuch as the case will be tried again, we express no opinion upon the merits. For the reasons given the judgment of the circuit court is reversed and the cause remanded.

Reversed and remanded.