ALENA H. DAVIS vs. JOHN O. CARPENTER.

Berkshire.    September 13, 1898. — October 29, 1898.

Present: FIELD, C. J., HOLMES, KNOWLTON, BARKER, & HAMMOND, JJ.

*Bastardy — Plea — Residence of Complainant — Evidence — Trial.*

A plea to a complaint under the bastardy act, Pub. Sts. c. 85, setting out enough to show that no cause of action exists under the statute, is a plea in bar, and not in abatement.

If a girl eighteen years old, living with her parents in another State, is told by her father that he can no longer support her and that she must find a home elsewhere, and, with his assent and assistance, goes from her home by previous arrangement, with all her personal effects, to the house in this Commonwealth of a person who is willing to receive her into his family as his daughter, with the intention of making it her home and of not returning to her former home, she may maintain a bastardy complaint made on the day of her arrival here, although the child was begotten in the other State, where the respondent resided, and was also born there while she was visiting her father during his illness, having returned there for such visit nine days after her arrival here, and, by reason of her confinement, remaining there about seven weeks, and then returning and residing here continuously until the trial of the complaint.

At the trial of a complaint for bastardy by a girl eighteen years old, who left her home in another State, where the child was begotten and the respondent resided, having been told by her father that he could no longer support her and that she must earn her own living, and went to the house in this Commonwealth of B., who was willing to give her a home, and made the complaint here, the judge admitted evidence of the complainant that she had previously "made her own trades" for work she had done and "herself received the pay therefor"; that she told the respondent of her condition, and he left the town soon afterwards; and the conversation between her and her father as to his inability to support her and the necessity of her making her home elsewhere and taking care of herself; also the conversation upon her arrival at B.'s house as to his willingness to receive her as his daughter, and as to her father resigning control of her; and her testimony that since her arrival her home had been at the house of B., who had supported her since then, and her father had done nothing for her support. *Held*, that no error appeared.

The respondent in a bastardy complaint is not entitled to try anew, before a jury, upon the plea of not guilty, the questions which have been raised by pleas in abatement and in bar, and tried before the judge without a jury, and evidence offered for that purpose is rightly excluded.

COMPLAINT, dated July 27, 1897, under the bastardy act, Pub. Sts. c. 85, describing the complainant as of Clarksburg in this Commonwealth.    The respondent filed a plea in abatement, alleging that the complainant's residence was in Readsboro in

the State of Vermont, and not in Clarksburg in this Commonwealth. The complainant also filed a supplemental complaint, setting forth the birth of the child since the original complaint, and joined issue upon the plea.

The respondent then, by leave of court, filed a second plea, averring that, at the time when the child was alleged to have been begotten by him, both he and the complainant were domiciled in the State of Vermont; that, at the time of making the complaint, the complainant was not, and never had been, a resident of this Commonwealth, but was a resident of the State of Vermont; that no child had ever been born to the complainant in this Commonwealth; and that the court had no jurisdiction of the complaint. The complainant joined issue upon this plea, and the pleas were heard together in the Superior Court, without a jury, before *Lilley*, J., who allowed a bill of exceptions, in substance as follows.

The respondent called the complainant as a witness, and she testified that she was born in Readsboro, Vermont; that she was eighteen years old on August 11, 1897; that her father and mother were living together in Readsboro at the time of the trial, and had so lived there for some years; that she lived at her father's house from January, 1897, until July 27, 1897, when she came to Clarksburg in this Commonwealth, to the house of Eugene Brown; that she reached his house in the morning of that day, and in the afternoon of the same day made the complaint in this case at his house to the clerk of the District Court of Northern Berkshire; that she had previously arranged with her counsel to meet the clerk there on that day; that before that time she had never lived in Massachusetts; that prior thereto, either early in July, or late in the preceding June, she had also, by arrangement with her counsel, met the clerk of the District Court of Franklin at Monroe Bridge in Franklin County, and there made to him a complaint charging the same facts as in the complaint at bar; that between the time of making such complaint in Franklin County and her coming to Clarksburg she saw her counsel, and was advised by him that, in order to have this prosecution lie in this Commonwealth, she would have to become a resident thereof, and her principal reason for coming here was to institute this complaint; and that she received a

letter from the wife of Brown, three or four days before she came, concerning her coming, but had not seen her upon the subject. This letter was later put in evidence, subject to the respondent's exception. It was dated July 24, and the witness testified that she received it on July 26, and answered it the same day.

On cross-examination, she testified that since she became large enough she had worked out at housework, and, subject to the respondent's exception, that she had made her own trades for such work, and herself received the pay therefor. She further testified that she discovered in May, 1897, that she was pregnant, and, subject to the respondent's exception, that she went to him about it, and on the following Tuesday he left Readsboro; also, subject to the respondent's exception, that at some time between July 12 and 27, her father said to her that his health was very poor, and he could not support her, and she would have to find a home somewhere else; and that she should have the rest of her wages and take care of herself. She testified further that she had known Mr. and Mrs. Brown since she was a small girl, and at one time lived near to them; that when she went to Brown's, she took her trunk and clothing, and left no personal property or effects of any consequence at her father's; and, subject to the respondent's exception, that on her arrival at Brown's, to whose house her father took her, Mr. and Mrs. Brown said that she could have a home there with them and be one of the family just the same as their own daughter, and that her father said that he had no control of her after that. She also testified that when she went to Brown's her intention was to make her home there; and, subject to the respondent's exception, that since she arrived at Brown's on the morning of July 27, her home had been in Clarksburg, at Brown's, and that she had since been supported by the Browns, and her father had done nothing for her support.

On redirect examination, she testified that she staid continuously at Brown's from July 27 until August 5, 1897, on which day she went to North Adams to the hearing in the District Court in this case; that upon that day she returned to Clarksburg, and went from there on the same day to her father's home in Readsboro, where she remained until September 25, 1897; that

she took with her at that time such clothing as she wished to wear while she was visiting; and that since September 25 she had been in Clarksburg.

On recross-examination, she testified as follows:

"*Q.* How came you to go back to your father's on the 5th of August? *A.* My father was very sick, and so my sister came after me and wanted me to go and make him a visit, and so I went. — *Q.* How did you find your father after you got there? *A.* Quite sick. — *Q.* Confined to the bed? *A.* He had his clothes on, and had been confined to his bed. — *Q.* What was the matter with him? *A.* He had sugar diabetes and rheumatism. — *Q.* And why did you remain so long as you did? *A.* Because he was sick. — *Q.* And what was the result to yourself? *A.* I was taken sick. — *Q.* Were you taken sick before you expected to be? *A.* Yes, sir. — Do you know the reason why you were taken sick before you expected to be? *A.* Why, I think the excitement. — *Q.* Of your father's sickness? *A.* Yes, sir. — *Q.* And your child was born there? *A.* Yes, sir. — *Q.* How long after that was it before you were able to go back? *A.* Six weeks. — *Q.* And then what did you do? *A.* I came back to Clarksburg."

On redirect examination, she testified that her friends did not think it best for her to go back to Clarksburg before September 25; that she paid her father $25 for board between August 14 and September 25, and paid her doctor's bills; that she did no housework at her father's house between those dates; that the respondent lived in Readsboro in December, 1896, and down to May, 1897, and had always lived there so far as she knew; and that his father and mother had lived there as long as she had known them.

Richard I. Davis, the father of the complainant, testified that he had lived in Readsboro for nine years; that the complainant had worked out for various families in Readsboro since she was twelve years old, except when she was at school; and, subject to the respondent's exception, that a week or ten days before she came to Clarksburg he told her that he was sick and could not support her, and she must take her own time and earn her own living, and that he could not support her in the condition he was in, and in the condition she was in; that he took her to Brown's, and Mrs. Brown said she might come and make her home there;

that he said he was perfectly willing she should go there and make it her home; that he could not support her, and that they might have her earnings and look after her the same as their own family; and that he had exercised no control over her since she came to Massachusetts.

On cross-examination, he testified that on the Saturday before he took his daughter to Brown's he and his wife had a talk with Mr. and Mrs. Brown at the latter's house; that Mr. and Mrs. Brown stated to him and his wife that the complainant might have a home there; that the Browns were to give an invitation to the complainant to come there; that he saw the letter which his daughter received from Mrs. Brown; and that it was Tuesday, July 27, when he took his daughter to the Browns.

The respondent requested the judge to rule, upon all the evidence, that the pleas were sustained, but the judge refused so to rule, and overruled both pleas; and the respondent excepted.

The case was then tried before a jury, upon the defendant's plea of "Not guilty." Counsel for the respondent offered to admit, for the purposes of the case, that the respondent was the father of the complainant's child. Counsel for the complainant accepted this admission, but, at the suggestion of the judge, called the complainant as a witness, who testified to facts sufficient to warrant the finding that she was the mother of a living child, born August 14, 1897, in Readsboro, Vermont, begotten there in November or December, 1896, by the respondent; and that she and the child were living at the time of the trial, November 5, 1897, at the Browns in Clarksburg, in this Commonwealth.

Counsel for the respondent stated that he did not desire to cross-examine the witness upon the question of the parentage of her child, but he proposed to cross-examine her upon the question of her residence, and facts relative thereto, and to the jurisdiction of this court. The judge refused to permit him so to do.

The respondent then offered to show that he was twenty-three years old on February 14, 1897; that he was born in Vermont, and resided there until some time in May, 1897; that his father and mother still resided there; that the complainant was born in Vermont on August 11, 1879, and resided there until July 27, 1897; that her father and mother were both residents of Vermont, living together and keeping house; that from some time

in January, 1897, until July 27, 1897, the complainant's home had been with her father and mother; that on July 12, 1897, she came to Monroe Bridge, and made a complaint in the District Court of Franklin against this respondent for bastardy; that the complaint was dismissed in that court for lack of jurisdiction; that between that date and July 27, she saw her counsel at her father's home in Vermont, and was advised by him that she could not maintain her prosecution in this Commonwealth, unless she acquired a residence here; that on July 24 her father and mother came to Massachusetts, to the house of one Brown, in Clarksburg, and there talked with Brown and his wife in regard to the condition of their daughter and her future home, and the prosecution against the respondent; that it was arranged between them that the Browns should send a written invitation to the complainant to come and make her home with them; that the letter was received by her on July 26; that she replied that she would come, and on July 27 she came, arriving at the house of Brown in the forenoon, and on the afternoon of the same day, by previous arrangement made between her and her attorney, she met him and the clerk of the District Court of Northern Berkshire at the Browns' house in Clarksburg, and there instituted these proceedings; that her principal reason for coming into Massachusetts was to qualify herself to maintain this complaint, as she had been advised; and that on August 5 she returned to the home of her father, in Readsboro, where her child was born on August 14, and where she remained until September 25, 1897.

The judge ruled that all the evidence included in this offer was incompetent and immaterial, and excluded the same; and the respondent excepted.

The jury returned a verdict of guilty; and the respondent alleged exceptions.

*F. L. Greene,* for the respondent.

*C. P. Niles,* for the complainant.

HAMMOND, J. The second plea was not in abatement, but in bar. It set out enough to show, not only that the present action could not be maintained, but that there was no cause of action under the statute. *Allin* v. *Connecticut River Lumber Co.* 150 Mass. 560. 1 Chitty, Pleading, (16th Am. ed.) 462. *Grant* v. *Barry,* 9 Allen, 459.

The issues raised by the first plea and this second plea were tried together without a jury, and the court, after hearing the evidence, "overruled both pleas." We do not understand by this entry that the ruling was that the facts set forth in the second plea would not, if proved, constitute a complete defence, but that the court found that the allegations of the plea were not all proved. The respondent excepted to this, as also to certain rulings made during the trial concerning the admission of evidence.

The only question really in dispute at this trial was whether at the time of making the complaint the complainant was, and thereafter continued to be, such a resident in this Commonwealth as to be able to maintain this action; and inasmuch as the child was begotten in Vermont, (the mother being then a resident and domiciled there,) and was born in Vermont, this was a vital issue. *Grant* v. *Barry, ubi supra.*

On this issue did the evidence warrant a finding for the complainant? We think it did. It is to be remembered that the object of the statute is to compel the father to assist the mother in the maintenance of the child, and to secure the municipality or State against any loss or expense for its maintenance. *Mc-Fadden* v. *Frye*, 13 Allen, 472.

The court might have found upon the evidence that before the day on which the complaint was made the father of the complainant told her that he could no longer support her; that she must earn her own living and might have her own wages, and that she must leave his house; that, thus being driven from the paternal roof, with the assent and assistance of her father she made an arrangement with the Browns to go and live with them in Clarksburg as their daughter; that in the forenoon of the day on which the complaint was made, in pursuance of this arrangement and with the full assent of her father, she left her home in Vermont and came with all her personal effects to the house of the Browns in Clarksburg for the purpose of making her home with them in their family as their daughter, for an indefinite period and with no intent of returning to Vermont; and that at the time she made the complaint she was thus living with the Browns. The court might further have found that her subsequent visit to her father in Vermont was not for the purpose of resuming her relations with her prior home, but was

simply for a temporary purpose, and that her home still continued with the Browns up to the time of the trial; that both father and daughter had determined that she should become a resident at Clarksburg with the Browns; and that all this was honestly done for the purpose of having a *bona fide* residence in Clarksburg.

Whether, she being a minor and her father still domiciled in Vermont, all this worked a change of her legal domicil it is not necessary to decide. She was residing here, and she was intending to continue to reside here. In fact she had no other place which she called or considered her home. If she had fallen into distress under these circumstances, it would have been the duty of the town or State to provide temporarily at least for her relief, and a like duty would have existed with reference to the child, if born alive. Pub. Sts. c. 84, §§ 14, 17.

Here, then, was a liability to be provided against by obtaining security from the putative father, and the case comes within the statute, so far as the residence of the complainant is material.

We see no error in the various rulings of the court as to the admission of evidence at the trial without a jury.

As to the admission of the letter of July 24 from Mrs. Brown, it is sufficient to say that its contents are not before us. The evidence that she had previously " made her own trades " for work she had done and " herself received the pay therefor," as well as that concerning the conversations with her father between the 12th and 27th days of July, and also that concerning the conversation which took place upon her arrival at Mr. Brown's house, both as testified to by the complainant and her father, all had a bearing, at least, upon the relation she sustained to her father and the relation she sustained to the Browns, and as a part of the circumstances; and the same may be said of the evidence at the close of the cross-examination of the complainant. The conversation with the respondent and the fact that he left Readsboro were admissible, at least as bearing upon the question of her real purpose in coming to Clarksburg.

Upon the trial before the jury, upon the plea of not guilty, the respondent proposed to try anew the questions which had been raised and tried by the court without a jury. The court refused to permit him to do so, and excluded the evidence offered for that purpose. There was no error in this.

This is a civil suit, and the respondent, by proceeding to trial without a jury upon these issues, must be held to have waived whatever right he might otherwise have had to a jury trial upon them.　　　　　　　　　　　　　　　*Exceptions overruled.*