ARMANDO FLORES, *Plaintiff in Error,* v. THE STATE OF FLORIDA, *Defendant in Error.*

Opinion Filed Nov. 21, 1916.

1. General objections to evidence are without weight in an appellate court if the evidence is admissible for any purpose.

2. In a bastardy proceeding the exhibition of an infant three months old to the jury for the purpose of having the jury compare it with the defendant to detect resemblances between the infant and reputed father, is error.

3. In a bastardy proceeding, the amount which the statute requires the defendant to pay when the issue is found against him, for the necessary incidental expenses attending the birth, may be ascertained by the court without the intervention of a jury.

Writ of Error to Circuit Court, Hillsborough County; F. M. Robles, Judge.

Judgment reversed.

*Macfarlane & Chancey,* for Plaintiff in Error.

*T. F. West,* Attorney General, and *C. O. Andrews,* Assistant, for the State.

Ellis, J.—This was a bastardy proceeding in which the plaintiff in error, who was the defendant below, was adjudged to pay to J. G., the mother of the bastard child, the sum of fifty dollars yearly for a period of ten years for the support, maintenance and education of the child, and the incidental expenses attending the birth of the child, which amounted to fifty-seven dollars. There was evidence to show that the expenses attending the birth of the child amounted to that sum. The jury, however, did not assess any damages. The verdict simply found the defendant below, Armando Flores, to be the father of the bastard child of J. G.

To that judgment a writ of error was taken and four errors assigned. Two points of law are presented by the record and argued by counsel.

At the trial the mother of the child, over the defendant's objection, was permitted to exhibit the infant to the jury for the purpose of having the jury compare it with the defendant and consider its resemblance to the alleged father, if any, in determining its paternity.

At the time of the trial the child was within a few days of being three months old. It was insisted by the defendant's counsel that the exhibition of the child to the jury for the purpose above stated was "illegal and con-

trary to law;" that the evidence was "immaterial and irrelevant" and would tend to prejudice the jury against the defendant. These objections were most general in character and according to the rule frequently announced by the court are entitled to little consideration, if the evidence was admissible for any purpose whatsoever. Lewis v. State, 55 Fla. 54, 45 South. Rep. 998; Putnal v. State, 56 Fla. 86, 47 South. Rep. 864; Danson v. State, 62 Fla. 29, 56 South. Rep. 677.

The evidence as shown by the bill of exceptions consisted of the testimony of the mother of the child, who said that she was twenty-eight years of age, was born in Spain, and that the defendant was the father of her child; that the child was born in February, 1916, and that the illicit intercourse between the mother and the defendant began in May, 1915, while the mother was employed as a maid in a lodging house where the defendant and ten or twelve other men had rooms; the testimony of a witness by the name of Balma Ceida, who said that the expenses attending the birth of the child amounted to fifty-seven dollars; the testimony of the defendant who denied that he had ever had sexual intercourse with the child's mother, and the exhibition of the child before the jury. The introduction of the infant in evidence that the jury might compare it with the defendant and consider its resemblance to the putative father, if there was any resemblance, in determining the paternity of the child, might have had a strong influence upon the minds of the jury in arriving at the verdict which they rendered.

What comparisons were made by the jury between the child and the putative father, we have no means of knowing; the record does not disclose, nor indeed could it disclose, what resemblance, actual or fancied, the jury perceived between the child and the defendant. There may

have been resemblances between the defendant and the child in the color of the eyes and hair; the shape of the ears. nose, mouth and hands, and other features; on the other hand such resemblances may have been imaginary, purely notional, and if opportunity for so doing had been given the defendant any fancied or imaginary resemblance might have been easily dispelled by close and careful comparison. The defendant, however, could not know what comparison each juror made when the child was exhibited. What to the defendant might have appeared as a dissimilarity to one or more jurors might have appeared as a striking resemblance, while other jurors, ignoring this one point of resemblance, might have discovered others which they fancied existed, and so the verdict may have rested in a large measure upon the variant opinions of the jurors based on facts not established by evidence, but which existed in the minds of the jurors as they severally fancied this or that resemblance between the child and the putative father to appear. As Mr. Justice LADD, of the Supreme Court of Iowa, in State v. Harvey, 112 Iowa 416, 84 N. W. Rep. 535, 52 L. R. A. 500, said: "How could a new trial be ordered because of the insufficiency of evidence in such a case?" In the case at bar the child was exhibited to the jury not for the purpose of showing any peculiarity of. color or features, but merely to show a resemblance between it and its putative father, which was a matter of opinion and that resting not upon any specific fact, but a vague, uncertain and perhaps fancied resemblance of the immature features of the child to those of the defendant.

An examination of the decisions of the courts of last resort in other jurisdictions reveals nothing more than that the courts are in irreconcilable conflict upon the question of the admissibility of such evidence. On the

one hand it is maintained that while it may be a well-known physiological fact that peculiarities of form, feature and personal traits are oftentimes transmitted from parent to child, it is equally true as a matter of common knowledge that during the first few months of a child's existence it has that peculiar immaturity of feature which characterizes it as an infant and that it changes often and very much in looks and appearance during that period. On the other hand it is maintained that the weight to be given to such evidence is for the jury and its weakness or uncertainty affords no reason for excluding it. This summing up of the decisions in this country upon the question is contained in 3 R. C. L. p. 764, from the text of which the above language is taken. Our examination of the authorities referred to in the footnotes to the above citation, and those referred to in the briefs of counsel and found by our own research, convince us of the conflict of opinion on the question of the admissibility of such evidence where the child exhibited is only three months old, when no question of the race or color of the bastard child's father is involved, but even in such case the child is exhibited to the jury to show some peculiarity of features or color, and not for the purpose of general comparison to discover resemblance between it and the defendant.

Mr. WIGMORE in his work on evidence says that the sound rule is to admit the fact of similarity of specific traits however presented, provided the child is, in the opinion of the trial court, old enough to possess settled features or other corporal indications. 1 Wigmore on Evidence, p. 222. We think that this rule is supported by the better reason and is the one that should be followed in the absence of any statute permitting the exhibition to the jury of a child of whatever age in bastardy or other

proceedings involving the paternity of the child to the end that the jury may make its own comparisons and form its own conclusions as to particular or general resemblances.

If the rule as suggested by Mr. WIGMORE is followed, the objection to the evidence on account of its inherent weakness and unreliability would be largely if not entirely removed.  In the first place the trial court would have passed upon the question as to whether the child possessed features or other corporal indications of sufficient development to permit a comparison between them and those of the defendant; in the second place, the particular features or other corporal traits claimed to be possessed by the child would be, by the adoption of the rule brought specifically to the jurors' attention and the comparison made with reference only to such features or corporal traits.  It seems to us that to permit an issue of such grave consequences to be determined against a defendant in a bastardy proceeding upon the imaginary, fancied or notional general resemblance between a child of a week old, or even a few months old, and the defendant in such proceedings, would be to place the defendant at a disadvantage which he could not possibly overcome.  His counsel could only guess at the point of similarity which the jury might perceive and on which it might determine the issue and he would be deprived utterly of the right to a review of the evidence by an appellate court.

In the case of Adams v. State, 93 Ark. 260, 124 S. W. Rep. 766, the court quotes approvingly the rule as laid down by Wigmore and quoted above, but in its conclusion departs from the rule upon the authority of the dictum of the Supreme Court of Alabama in the case of Paulk v. State, 52 Ala. 427.  In the case of Kelly v. State, 133 Ala. 195, the court expressly announced that it followed

the dicta in the Paulk case and Linten v. State, 88 Ala. 216, 7 South. Rep. 261, but in the latter case the question was one of race and not of resemblances. The case of Wright v. Hicks, 15 Ga. 160, the other case relied upon in the case of Adams v. State, *supra,* does not support the rule announced in the latter case. In the case of Rex v. Hughes, 22 Ont. L. Rep. 344, 19 Am. & Eng. Ann. Cas. 534, the court said: "It has long been the practice of the courts of this province to permit the production of the child at the trial and the pointing out to the jury of the likeness of the child to the defendant" and "It ought to be within the power of the court to prevent an abuse of the practice, though I think it would be better and more regular if the likeness were testified to by some witnesses in all cases; otherwise a court of appeal is at a great disadvantage if called upon to deal in any way with such evidence as well as for other reasons." In the case of State v. Woodruff, 67 N. C. 89, the child was exhibited to the jury with the full approbation of the defendant, and in the case of State v. Britt, 78 N. C. 439, the defendant offered to show by the midwife that the child bore a resemblance to a man other than the defendant; this was held admissible, the court citing the case of State v. Woodruff, *supra,* as a precedent for the admissibility of such evidence. In the case of Anderson v. Aupperle, 51 Ore. 556, 95 Pac. Rep. 330, the case was an action for seduction. The child, being a little under three months of age, was offered and received in evidence for the inspection of the jury over the defendant's objection. The court held the evidence admissible upon the authority of State v. Danforth, 73 N. H. 215, 60 Alt. Rep. 839. 111 Am. St. Rep. 600. In that case the State was permitted to exhibit the child to the jury and to argue from peculiarities of features claimed to be common to the child and

the defendant and from a general resemblance between them. After verdict the defendant moved to set the same aside and, for a new trial on the ground of alleged misconduct of the State's counsel. The court, after discussing the practice at some length, quoted approvingly the rule laid down by Wigmore referred to above, but said: "Whether it should be here followed, is a question which the present case does not raise for decision." In the case at bar, however, the question is presented and we think the rule should have been followed. I Wigmore on Evidence, *supra;* State v. Smith, 54 Iowa 104, 6 N. W. Rep. 153; State v. Danforth, 48 Iowa 43; State v. Harvey, *supra;* Robnett v. People, 16 Ill. App. 299; Hanawalt v. State, 64 Wis. 84, 24 N. W. Rep. 489; State v. Neel, 23 Utah 541, 65 Pac. Rep. 494; Clark v. Bradstreet, 80 Me. 454, 15 Atl. Rep. 56; Reitz v. State, 33 Ind. 187; Overlock v. Hall, 81 Me. 348, 17 Atl. Rep. 169. The exhibition of the child to the jury for the purpose of having the jury compare it with the defendant and consider its resemblance, if any, in determining its paternity was prejudicial error and for that reason the judgment should be reversed.

It is contended by plaintiff in error that the court erred in entering judgment against the defendant below in the sum of fifty-seven dollars on the verdict of the jury. The verdict of the jury was as follows: "We the jury find the defendant, Armande Flores, is the father of the bastard child of Juana Gonzalez, so say we all," and was signed by the foreman.

The jury did not determine the amount of the necessary incidental expenses attending the birth of the child, although there was evidence that such expense amounted to fifty-seven dollars.

The plaintiff in error contends that the jury should

have assessed the amount of the damages, and that if the statute contemplates the ascertainment of the amount to be paid by the defendant on account of such expense and the inclusion of it in the judgment, it is unconstitutional because it deprives the defendant of his right to a trial by jury as to the amount of such expenses.

A bastardy proceeding is a civil action in the Circuit Court. The statute was not designed to punish the accused for crime, but to makè him contribute to the support of the child. William H. T. v. State, 18 Fla. 883; Ex Parte Hays, 25 Fla. 279, 6 South. Rep. 64; Bond v. State, 34 Fla. 45, 15 South. Rep. 591. But it is a civil procedure to enforce a police regulation designed to secure immunity of the public from the child's support. See State v. Wynne, 116 N. C. 981, 21 S. E. Rep. 35; Myers v. Baughman, 61 Neb. 818, 86 N. W. Rep. 507; Davis v. Carpenter, 172 Mass. 167, 51 N. E. Rep. 530; 7 C. J. p. 967, and authorities cited.

The amount which the defendant is condemned to pay, when the issue is found against him, towards the support, maintenance and education of the child, is limited by the statute within a certain maximum and is in the nature of a penalty and is not affected by the actual pecuniary damage which the mother of the child may suffer or incur; it is fixed by law within certain limits, but the necessary incidental expenses attending the birth of the child is a question of fact (Andrew v. Catherine A, 16 Fla. 830) which the court may ascertain after the verdict against the defendant upon the issue which the statute requires to be submitted. Hamilton v. State, 117 Ind. 348, 20 N. E. Rep. 252; Scott v. State, 102 Ind. 277, 1 N. E. Rep. 691. In the last case cited the court said that the trial proper ends with the finding that the defendant is the father of the child, and if there was error as to

the amount of the judgment it would not result in a reversal of the entire judgment, but simply in a remanding of the case with instructions to hear the evidence and render the proper judgment.    The matter of ascertaining the necessary expenses attending the birth of the child, which expense the statute imposes as a consequence following the verdict against the defendant, is in the nature of ascertaining the costs of the proceeding which the court, however, should not arbitrarily fix, but should ascertain upon evidence.    There was evidence taken during the trial as to such expenses, and we can see no reason why the court should not have utilized that evidence in arriving at the amount of the expense.    There was no error in the judgment on that account.

For the error pointed out the judgment is reversed.

TAYLOR, C. J., and SHACKLEFORD, COCKRELL and WHITFIELD, JJ., concur.