RALEIGH FRED WILLIAMS, *Plaintiff in Error*, v. STATE OF FLORIDA, *ex rel.*, GRIZELLE LUCILE TAYLOR, *Defendant in Error.*

Opinion Filed July 12, 1920.

1. In a proceeding in bastardy where the defendant is adjudged to be the father of the bastard child, and to pay a cer-

tain sum of money for its support, it is error for the judge to sentence the defendant to jail at hard labor in default of compliance by him with the terms of the judgment.

2.  In a bastardy proceeding the exhibition of an infant in its mother's arms to the jury and using the infant as an informal exhibit by permitting reference to it by the witnesses, and thus enabling the jury to make comparisons between its features and those of the reputed father, constitutes reversible error.

A Writ of Error to the Circuit Court for Leon County; E. C. Love, Judge.

Judgment reversed.

*Fred H. Davies,* for Plaintiff in Error;

*W. C. Hodges,* for Defendant in Error.

ELLIS, J.—This case is a proceeding in bastardy. The plaintiff in error was adjudged to be the father of the bastard child of Grizelle Lucile Taylor, and to pay forty-eight dollars per year for ten years toward the support of the child, to give bond with sufficient sureties to secure the performance of the obligation placed upon him by the judgment, to pay the costs of the proceeding, and upon default in compliance with the judgment to be imprisoned by confinement in the county jail for a period of eight months at hard labor.

It is contended that the judgment is erroneous in that the alternative provides for imprisonment at hard labor. This criticism of the judgment is sound. One who in proceedings in bastardy is adjudged to be the father of a bastard child is not a convict within the meaning of

Section 4010 of the General Statutes of Florida, 1906, which provides that: "When punishment of imprisonment in the county jail is awarded against any convict, the court may also sentence the prisoner to be employed at hard labor, and in such case he may be employed at such manual labor as the county commissioners may direct."

Chapter 4154, Acts of 1893, which is now Section 2601 of the General Statutes, provides that in all cases of bastardy where the judgment is rendered against the reputed father of the child, the court shall in such judgment specify a certain time for which the defendant shall be imprisoned in case of refusal or failure to comply with the judgment. The feature of the statute prescribing and limiting the term of imprisonment does not change the nature of the action, which is civil, not criminal. See Bond v. State *ex rel.* Jarvis, 34 Fla. 45, 15 South. Rep. 591; Flores v. State, 72 Fla. 302, 73 South. Rep. 234. Nor does the statute authorize the imposition of penal service upon the defendant as if he had been convicted of some crime.

There may be very good reasons why the legislature should direct such judgment to be imposed, but it has not yet acted upon them.

The complaining witness, a young woman of eighteen years of age, was the only witness in her behalf, unless the ten months old infant which during the entire trial she held in her arms, and while testifying referred to as "my child," and that the defendant was the father of it, could be considered as a witness or an exhibit. This procedure was allowed over the objection of the defendant.

The child was in the view of the jury. It was referred to as *"this* is my child," making it thereby an informal exhibit in the case. It was not actually offered in evidence, but the same advantage was sought and doubtless obtained by producing the mother with the infant in her arms and causing her to sit within the bar during the entire trial, thus making of the infant an informal exhibit, enabling the jury to make whatever comparisons it desired between the child and putative father, but even then not under the most favorable circumstances. It was impossible, however, for the defendant to know what comparison each juror made or could have made. Whether they saw fancied or real resemblances in features or not, no one knows; but the opportunity was provided for comparison; indeed under the circumstances comparisons would be made involuntarily. While the infant under this practice was not a formal exhibit, it was an informal one; while not technically offered in evidence, it was in fact in evidence as much so as any witness who took the stand. The trial court must have considered that such practice would in effect be an exhibition of the child for comparison with the putative father, because before ruling upon the motion to exclude the child from the view of the jury he inquired of the mother under oath the age of the infant, and being informed that it was ten months old denied the motion.

The purpose of the inquiry was doubtless to ascertain whether in the court's judgment the infant was old enough to possess settled features or other corporal indications, and deeming it to be old enough to possess a sufficient number of permanent or settled features to enable the jury to make its own comparisons with a reasonable degree of accuracy, allowed the child to be held in its mother's arms before the jury during the trial, thus

making of it an exhibit for all such purposes of comparison as the jury might devise.  But this method did not give to the defendant the opportunity to object to the evidence on account of any inherent weakness and unreliability, his counsel probably did not treat the court's ruling as one upon the competency of evidence to which specific objections had been made to its introduction, nor did the practice which was pursued result in a comparison specifically of any one or more features and a discussion of those points of fancied or real resemblance.

If the jury in this case was in any wise influenced in its verdict by any comparison of features or bodily indications between the infant and the reputed father, something which it was entirely possible for them to do, and which any normal person would under the circumstances involuntarily do, although a moment's reflection might reveal the unsatisfactory character of the argument based upon a fancied resemblance between the two, the defendant could only guess at the point of similarity which the jury might have perceived and he would be deprived utterly of the right to a review of the evidence by an appellate court.  Such were the views of this court as expressed in the Flores case *supra*.

We think that the proceedings complained of by the counsel for plaintiff in error in this regard were in effect contrary to the spirit if not the letter of the rule which this court in the Flores case said was the better one to follow in such cases.  And that the possible harmful result upon the defendant consequent upon the error necessitates a reversal of the judgment.

The judgment is reversed.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND WEST, J. J., concur.