Commonwealth v. Gruttner.

COMMONWEALTH vs. FRANCIS J. GRUTTNER
(and a companion case[1]).

Suffolk. November 3, 1981. — March 2, 1982.

Present: WILKINS, LIACOS, NOLAN, & LYNCH, JJ.

*Limitations, Statute of.* *Parent and Child,* Support of illegitimate child.
*Practice, Criminal,* Support of illegitimate child. *Practice, Civil,*
Support of illegitimate child.

No statute of limitations applies to an action for the adjudication of
paternity. [477-479]

Actions for nonsupport of an illegitimate child, commenced by criminal
complaints under G. L. c. 273, § 15, were governed by the six-year
statute of limitations applicable to criminal cases, contained in G. L.
c. 277, § 63. [479-481]

COMPLAINT received and sworn to in the Dorchester Divi-
sion of the District Court Department on December 7, 1979.

On appeal to the jury session of the Boston Municipal
Court Department a motion to dismiss was heard by *Pino,* J.

COMPLAINT received and sworn to in the Charlestown
Division of the District Court Department on November 12,
1980.

On appeal to the jury session of the Boston Municipal
Court Department a motion to dismiss was heard by *Grabau,*
J., and questions of law were reported by him to the Ap-
peals Court.

The cases were consolidated in the Appeals Court, and
the Supreme Judicial Court granted a request for direct ap-
pellate review.

*Michael J. Traft,* Assistant District Attorney, for the
Commonwealth.

*Ralph R. Bagley* for Francis J. Gruttner.

[1] Commonwealth *vs.* Carmen Mayo.

*Norman F. Lazarus* for Carmen Mayo.

LIACOS, J. These cases come before us, via different avenues, for resolution of two related issues arising in the context of criminal actions for the alleged failure of putative fathers to support their children. G. L. c. 273, § 15, as amended through St. 1979, c. 621, § 2.[2] We are asked to determine first what, if any, statute of limitations applies to adjudications of paternity made during § 15 proceedings. Also before us is the question of the appropriate limitation period for the bringing of the nonsupport action itself.

We conclude that no time bar blocks the bringing of an action to adjudicate the paternity of an illegitimate child. A criminal nonsupport action, however, must be brought within six years of the last alleged refusal or neglect by a defendant to provide support. We summarize the facts of the two cases.

Francis J. Gruttner was named as the defendant in a complaint brought under G. L. c. 273, § 15, on December 7, 1979. The complaint alleged that he was the father of a child then almost four years of age, and charged him with the failure to provide reasonable support and maintenance of the child since her birth. At a bench trial in a District Court he was determined to be the father of the child

---

[2] "Any parent of an illegitimate child, whether begotten within or without the commonwealth, who neglects or refuses to contribute reasonably to its support and maintenance, shall be guilty of a misdemeanor. If there has been any final adjudication of the paternity of the child, such adjudication shall be conclusive on all persons in proceedings under this section; otherwise, the question of paternity shall be determined in proceedings hereunder. If such person has sworn to and executed an acknowledgment of paternity which was accompanied by a written affirmation of paternity sworn to and executed by the mother, such acknowledgment shall be admissible as evidence hereunder and shall be prima facie evidence of paternity; provided, however, that when such acknowledgment is executed with the department of public welfare or with any official of the court, such acknowledgment shall not be admissible as evidence unless the person was informed in writing at the time the acknowledgment was executed that such acknowledgment could be used against him in criminal nonsupport proceedings under this chapter. The duty to contribute reasonably to the support of such child shall continue during its minority."

and convicted of nonsupport. He was ordered to pay $30 a week pendente lite, or to participate in a work program eight hours a week.

The defendant entered an appeal for a trial de novo in the jury of six session of the District Court and there filed a motion to dismiss the complaint, stating as grounds that the determination of paternity in a § 15 proceeding was governed by a three-year statute of limitations, which, he claimed, had run. The defendant's motion was first denied, but was allowed on reconsideration. The Commonwealth appealed the dismissal to the Appeals Court. Mass. R. Crim. P. 15 (a) (1), 378 Mass. 882 (1979). On August 5, 1981, the case was consolidated in the Appeals Court with Commonwealth vs. Carmen Mayo and later transferred to this court on an application for direct appellate review.

Carmen Mayo was charged under § 15 on a complaint obtained on November 12, 1980, by an employee of the Department of Public Welfare. The complaint alleged that the defendant "during the six years next before the making of this complaint . . . did unreasonably neglect to provide for the support of his illegitimate minor children" who were then nine and seven years of age.

After a bench trial the defendant was adjudicated the father of the children and convicted of nonsupport. An order was entered for the payment of $25 a week, an undetermined amount of which was to be applied to an "arrearage" of $450.

The defendant Mayo entered an appeal to the jury of six session, where he filed a motion to dismiss on the ground that the six-year criminal statute of limitations, G. L. c. 277, § 63, barred the prosecution. The motion was denied, but the case was made the subject of a report by a judge of the Boston Municipal Court Department as one of four cases under the name Commonwealth vs. Edward J. Lobo. Mass. R. Crim. P. 34, 378 Mass. 905 (1979). See *Commonwealth* v. *Lobo, ante* 436 (1982). Mayo and the Commonwealth filed a joint motion in the Appeals Court to consolidate the case with the appeal of Francis J. Gruttner.

All parties apparently concede that G. L. c. 273 itself sets out no limitation period for the bringing of actions. The Commonwealth argues that because § 15 provides that the duty to support one's illegitimate children "shall continue during [their] minority," and further provides that if there has been no prior, final adjudication of paternity, "the question of paternity shall be determined in proceedings hereunder," the Legislature must have intended that paternity may be adjudicated at any time during the child's minority. In support of this argument, the Commonwealth asserts that to apply any statute of limitations to paternity proceedings would be unconstitutional in that such a view would work an invidious discrimination against illegitimate children as compared to legitimate children.

Finally, the Commonwealth claims that, assuming arguendo, a legislative intent, and one that is constitutional as well, to apply a limitation period to paternity proceedings, the controlling period is the six-year limit applied to criminal cases under G. L. c. 277, § 63, and not the three-year period under G. L. c. 260, § 2A.

On the rare occasions when the question of a limit in time to the adjudication of paternity has been before this court, we have consistently held that there is no statute of limitations which applies. Prior to 1913, statutes for the maintenance of the children of unwed parents were in their nature remedial, and proceedings under them "were essentially civil and designed, not to inflict punishment on the father, but to compel him 'to assist the mother in the maintenance of the child, and to secure the municipality or State against any loss or expense for its maintenance.'" *Commonwealth* v. *Lanoue*, 326 Mass. 559, 562 (1950), quoting from *Davis* v. *Carpenter*, 172 Mass. 167, 173 (1898). See *McFadden* v. *Frye*, 13 Allen 472, 473 (1866). In a case brought under one of these earlier statutes for maintenance with respect to children nine and five years of age at the time of the issuance of the complaint, the putative father raised the bar of the statute of limitations. This court held that "[n]o statute of limitations bars a mother's right to complain against the

father of her bastard child." *Wheelwright* v. *Greer*, 10 Allen 389, 391 (1865). Contrast *Commonwealth* v. *Cole*, 5 Mass. 517 (1809), construing St. 1785, c. 66, which had a time limitation explicitly included.

By 1913, the problem of defaulting fathers caused the Legislature to express "in a criminal context a father's responsibility for fathering an illegitimate child. St. 1913, c. 563." *Commonwealth* v. *MacKenzie*, 368 Mass. 613, 614 (1975). See *Commonwealth* v. *Dornes*, 239 Mass. 592, 594 (1921). Under G. L. c. 273, § 11, the begetting of an illegitimate child was a misdemeanor (see *Commonwealth* v. *Dornes, supra*) and the failure to support the child was a distinct and continuing offense under § 15. *Id.*

Until its repeal in 1977, then, G. L. c. 273, § 11, made "begetting" a criminal offense. See St. 1977, c. 848, § 7. In *Commonwealth* v. *Gross*, 324 Mass. 123 (1949), an alleged father was charged under § 15 with nonsupport, for the five preceding years, of a child born almost seven years earlier. The defendant, in a special plea, claimed "that there has been no final adjudication of the paternity of said child, and that no indictment or complaint charging the defendant with getting the complainant with said child has been found and filed within six years from the date of the commission of said crime." *Id.* at 124. His motion for a directed verdict was denied. On appeal this court held that "[t]here was no necessity of prior adjudication of paternity, as § 15 provides that where there is no such adjudication 'the question of paternity shall be determined in proceedings hereunder.'" *Id.* We concluded that "[n]o question of statutory limitation arises." *Id.*

Finally, in *Commonwealth* v. *Mondano*, 352 Mass. 260 (1967), we considered a complaint under § 15 filed almost six years after the birth of the child. To this complaint the defendant filed a plea in bar setting out the prior dismissal of a § 11 complaint, for "begetting" the same child. The prior dismissal was on the ground that the six-year statute of limitations, running from the date of conception, had run. The defendant contended that the dismissal of the § 11

complaint was, in effect, an adjudication that he was not the father of the child. We refused to bar the nonsupport action and held that "[t]he dismissal of the § 11 complaint adjudged only that the defendant could not be found guilty of begetting the child for the reason that the *prosecution* was barred by the statute. It was an adjudication on the merits only in the sense that it barred any subsequent prosecution for the same offence." (Emphasis supplied.) *Id.* at 262. The court held, however, that a complaint under § 15 was not similarly barred.

Recently, the Legislature amended the statute affecting the right of illegitimate children to inherit from their fathers. General Laws c. 190, § 7, as appearing in St. 1980, c. 396, recognizes several methods by which an illegitimate person may be adjudged the child of a decedent. One method allows such a person to "establish paternity if, within the period [established for bringing actions against an estate], such person . . . commences, in a court of competent jurisdiction, an action in which the executor or administrator is a named party and in which such paternity is ultimately proved." See *Lowell* v. *Kowalski*, 380 Mass. 663, 670 (1980). There is thus no time bar running from the date of the child's birth with respect to such rights of inheritance.

We conclude the case law and the analogous statutory provisions demonstrate that no statute of limitations should apply to an action for the adjudication of paternity.

The defendant Gruttner argues that due process considerations require that some time limit be placed on the exposure of putative fathers to paternity claims. We have considered this argument in reaching our conclusion, being aware that the creation of a familial bond in this case, i.e., the judicial determination of the existence of a parent-child relationship, requires procedural fairness to both the child and the putative father. See *Little* v. *Streater*, 452 U.S. 1, 13 (1981). The interest to be given paramount weight on a scale of values in this context should be that of the child. Cf. *id.* at 13 n.9; *Wyman* v. *James*, 400 U.S. 309, 318 (1971).

For a collection of cases in other jurisdictions dealing with this problem see 59 A.L.R.3d 685 (1974).

We are extremely reluctant, in the absence of a clear legislative mandate to the contrary, to visit on such a person a time bar which results in loss of support, largely due to inaction or neglect by others. See *Weber* v. *Aetna Cas. & Sur. Co.*, 406 U.S. 164, 175-176 (1972).[3] Without detracting in any way from the weight to be afforded problems of proof of paternity, such problems cannot "be made into an impenetrable barrier that works to shield otherwise invidious discrimination." *Gomez* v. *Perez*, 409 U.S. 535, 538 (1973).

The fact remains that the passage of time bears no logical relation to the question whether a man is actually the father of a child. In the case of a man who claims he is not the father of the child in question, ample protection is provided him by the requirements, in a proceeding under G. L. c. 273, that paternity be established beyond a reasonable doubt and that he be given a right to appeal the adjudication to a jury of six. We think that a putative father's rights are properly safeguarded by a focus on strict evidentiary standards and reliable methods of proof, such as blood grouping tests, rather than on possibly arbitrary time limits.

We turn finally to the question of the limitation period applicable to the commencement of a nonsupport action. By its terms, § 15 imposes a continuing duty[4] on a parent to support his or her illegitimate children during their minority. We have in turn described nonsupport as "a distinct and continuing offence." *Commonwealth* v. *MacKenzie, supra*

---

[3] Furthermore, there is some question whether a statute of limitations on the adjudication of the paternity of an illegitimate child itself could pass muster on equal protection grounds. See *Weber* v. *Aetna Cas. & Sur. Co.*, 406 U.S. 164, 175-176 (1972). Cf. *Lowell* v. *Kowalski*, 380 Mass. 663, 669 (1980) (statutory classification limiting inheritance rights of illegitimate children too broad); *Commonwealth* v. *MacKenzie*, 368 Mass. 613, 617 (1975) ("statutes obligating a father to support his illegitimate child *eliminated* a sex-based discrimination" [emphasis supplied]).

[4] The time that this duty arises is discussed in *Commonwealth* v. *Chase, ante* 461 (1982).

at 615, quoting from *Commonwealth* v. *Dornes*, 239 Mass. at 594. *Commonwealth* v. *Lanoue, supra. Commonwealth* v. *Gross, supra.* Thus, since the criminal statute of limitations runs from the last act of the offense, in this case being the last instance in which support was due but not forthcoming, an action under G. L. c. 273, § 15, must be brought within six years of such failure to support. In effect, if the nonsupport has been continuous, this means that the action may be brought any time during the child's minority, and during the period six years thereafter. The practical consequence of this is that, for an action brought after minority, the recovery for past support will be limited to expenditures for support made in the period between six years before the complaint and the date terminating the defendant's support obligation. See *Commonwealth* v. *Chase, supra* at 472 n.8.

As to the defendant Gruttner, the order dismissing the complaint is reversed. As to the defendant Mayo, the denial of the motion to dismiss is affirmed. The cases are to be remanded for trial de novo in the jury of six session of the District Court in accordance with this opinion.

*So ordered.*